**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| LE'SEAN EDGE, | Case No. 1:20-cv-892 |
| Plaintiff, | Black, J. |
| v. | Bowman, M.J. |
| MS. MAHLMAN, et al., | |
| Defendants | |

**REPORT AND RECOMMENDATION**

Plaintiff, presently incarcerated at the Southern Ohio Correctional Facility, proceeding *pro se* and *in forma pauperis*, has filed a civil complaint pursuant to 42 U.S.C. § 1983. (Doc. 4). Upon initial screening, the Court dismissed all but one Eighth Amendment claim against Defendants Correctional Officers Justice and Wellman (collectively, "Defendants"). Defendants have now moved to dismiss Plaintiff's sole remaining claim. (Doc. 14). Pursuant to local practice, the motion has been referred to the undersigned magistrate judge for initial consideration and a Report and Recommendation. For the reasons stated, Defendants' motion should be GRANTED.

**I.     Standard of Review**

Defendants have filed a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), seeking to dismiss the complaint for failure to state a claim upon which relief can be granted. (Doc. 14 at 1). However, it appears that Defendants filed their motion in lieu

1

of an answer.[1] Therefore, the motion could be construed as a motion to dismiss filed under Rule 12(b)(6) rather than a motion filed under Rule 12(c).

In this instance, the distinction is irrelevant since a district court reviews a Rule 12(c) motion for judgment on the pleadings under the same standard applicable to a Rule 12(b)(6) motion to dismiss. *EEOC v. J.H. Routh Packing Co.,* 246 F.3d 850, 851 (6th Cir. 2001). Accordingly, "we construe the complaint in the light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.,* 508 F.3d 327, 336 (6th Cir. 2007). While such determination rests primarily upon the allegations of the complaint, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin Coll.,* 259 F.3d 493, 502 (6th Cir. 2001) (quoting *Nieman v. NLO, Inc.,* 108 F.3d 1546, 1554 (6th Cir. 1997)) (emphasis omitted). The court "need not accept the plaintiff's legal conclusions or unwarranted factual inferences as true." *Commercial Money Ctr.,* 508 F.3d at 336. To withstand a Rule 12(c) motion for judgment on the pleadings, "a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Id.*

The Sixth Circuit has explained the pleading requirements that are necessary to survive a Rule 12(c) motion as follows:

> In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.... Factual allegations must be enough to

---

[1] Defense counsel entered an appearance as an "interested party" in anticipation of the Defendants being properly served. (Doc. 2). Defendants were served on February 23, 2021, with a responsive pleading due on March 16, 2021. (Doc. 16). Defendants' motion was timely filed in lieu of an answer on March 11, 2021.

raise a right to relief above the speculative level...." *Id.* at 1964–65 (internal citations omitted). In *Erickson v. Pardus,* 550 U.S. 89, 127 S. Ct. 2197, 167 L.Ed.2d 1081 (2007), decided two weeks after *Twombly,* however, the Supreme Court affirmed that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Id.* at 2200 (quoting *Twombly,* 127 S.Ct. at 1964). The opinion in *Erickson* reiterated that "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Id.* (citing *Twombly,* 127 S.Ct. at 1965). We read the *Twombly* and *Erickson* decisions in conjunction with one another when reviewing a district court's decision to grant a motion to dismiss for failure to state a claim or a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12.

*Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295-96 (6th Cir. 2008); *see also, generally, Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The fact that the undersigned permitted a single Eighth Amendment claim to proceed beyond the screening stage does not preclude the subsequent dismissal of the same claim upon an appropriate motion. It is true that the legal standard of review for failure to state a claim under Rule 12(c) or Rule 12(b)(6) is technically the same as the standard of review for failure to state a claim under 28 U.S.C. §§ 1915(e) or 1915A. *See Hill v. Lappin,* 630 F.3d 468, 470-471 (6th Cir. 2010). However, the frame of reference differs significantly. Screening under 28 U.S.C. § 1915(e) is extremely liberal. The perspective of this Court, as a neutral arbiter examining the complaint on a superficial level without the benefit of briefing, differs from that of an opposing party who has an incentive to explore all possible legal arguments in a subsequent motion to dismiss or motion for judgment on the pleadings. Necessarily constrained by limitations of time and resources in the course of its initial *sua sponte* examination, this Court frequently will

3

permit "further development" of a weak legal claim by requiring a defendant to file an answer or response.

In addition, 28 U.S.C. § 1915(e)(2) expressly permits dismissal *"at any time* if the court determines that ... the action or appeal ... fails to state a claim on which relief may be granted." *Id.* (emphasis added). Therefore, the statute itself allows dismissal based upon a subsequent redetermination that no claim has been stated, even if the court's initial inclination was to let the claim proceed. In the case presented, the undersigned is now persuaded that Defendants are entitled to dismissal based upon Plaintiff's failure to state any claim against them.

## II. Facts Alleged in Complaint

Because all other claims were dismissed, only the following allegations against Defendants Justice and Wellman remain at issue.

> On the date of 9-2-20 around 6 p.m. I was escorted to J2 #33 once I was placed in my cell I noticed how filthy and unsanitary the cell was. Their [sic] was feces splatter and piss splatter on the wall also the sink and toilet had a white dry film substance on the surface that I could only assume to be piss, spit, cum, or God knows what. I asked C.O. Justice and C.O. Wellman for gloves and a cleaning chemical. I was denied. That forced me to clean of[f] the sink and toilet to the best of my ability which puts [me] in direct contact with germs or viruses not knowing who slept in this [cell] prior to me. And with Covid-19 at a[n] all time high it put me at risk. My 8th Amendment was violated on cruel and unusual terms.

(Doc. 4 at 5).[2] The undersigned infers from the allegations that Plaintiff cleaned the toilet and sink soon after his request for cleaning chemicals and gloves was denied.

---

[2]Plaintiff makes similar (and worse) allegations about the conditions of a second cell that he was placed in on October 4, 2020. "On the wall was piss and feces splatter, the sink had a white dry substance on it, the toilet also had a dry white substance all over it and it was caked up brown substance inside the toilet," with "black mold" on the ceiling and a wall. (*Id.* at 4, 6). He alleges that he asked the "third shift C.O." for gloves and cleaning chemicals but was denied. (*Id.* at 6). The undersigned dismissed this similar claim on initial screening in part because Plaintiff failed to allege that the defendant correctional officer had any knowledge of its allegedly unsanitary conditions.

4

### III. Plaintiff's Failure to State an Eighth Amendment Claim

The Eighth Amendment requires prison officials "to provide humane conditions of confinement" and to "ensure that inmates receive adequate food, clothing, shelter, and medical care...." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). However, "extreme deprivations are required to make out a conditions-of-confinement claim ... [b]ecause routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). Rather, "[t]he Eighth Amendment is concerned only with 'deprivations of essential food, medical care, or sanitation,' or 'other conditions intolerable for prison confinement.'" *Richmond v. Settles*, 450 Fed. Appx. 448, 455-56 (6th Cir. 2011) (quoting *Rhodes v. Chapman*, 452 U.S. at 348).

To establish an Eighth Amendment claim, a plaintiff must include allegations that satisfy both objective and subjective components of a constitutionally significant deprivation. In the pending motion, Defendants argue Plaintiff's claims fail as a matter of law for three reasons: (1) Plaintiff has failed to allege the objective element of his claim because he does not allege the duration of his exposure to unsanitary conditions or any resultant physical harm that was objectively serious; (2) Plaintiff has failed to allege facts that suggest either Defendant exhibited the requisite subjective intent, because he has not alleged "active unconstitutional behavior" (Doc. 14 at 6); and (3) Defendants are entitled to qualified immunity. Having more closely reviewed the Plaintiff's allegations in

5

light of the pending motion, the undersigned agrees that Plaintiff has failed to state any viable claim under the Eighth Amendment as a matter of law.

### A. Objective Component

To satisfy the objective component of his claim, Plaintiff must establish that the harm to which he was subjected was "objectively, sufficiently serious," such that "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities,'" *Farmer v. Brennan*, 511 U.S. at 834 (quoting *Rhodes, supra*, 452 U.S. at 347 (additional internal quotation marks and citations omitted)). Stated another way, Plaintiff must allege facts that present a "substantial risk of serious harm," meaning an "objectively intolerable risk of harm." *Id.*, 511 U.S. at 842, 846, and n. 9. Here, Plaintiff alleges that his confinement in a cell during the COVID-19 pandemic, with feces and urine splattered on one wall and an unidentified "white dry film" on the sink and toilet, was objectively serious to the degree required by the Eighth Amendment. The undersigned disagrees.

It is well-established that the presence of *some* unsanitary conditions in a cell (including fecal matter) does not establish an Eighth Amendment claim, except in circumstances where the volume of matter and duration of exposure are extreme. Otherwise, every poorly sanitized or malfunctioning toilet would be cause for constitutional concern. In a 2018 case, the undersigned summarized the case law in this frequently litigated area. *See Still v. Davis*, 2018 WL 1202827 (S.D. Ohio March 8, 2018), R&R adopted at 2018 WL 2943227 (S.D.Ohio June 12, 2018).

> Conditions-of-confinement cases are highly fact-specific. "In general, the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations of shelter,

6

food, drinking water, and sanitation' may meet the standard despite a shorter duration." *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (internal citation omitted). Claims alleging unsanitary conditions due to clogged toilets and leaky plumbing are relatively common in the prison system. In many cases, inmates deliberately cause flooding of toilets, either as a means of protest, or because they are mentally ill. In other cases, some form of accidental leak has caused the problem....

Colloquially speaking, the "yuck" factor influences the assessment of the severity of the deprivation to sanitation and level of risk to health and safety. Thus, cases involving excrement or feces, or raw sewage from toilet overflows, tend to evoke greater concern than cases like the one presented, involving leaky pipes that result in a lesser degree of non-potable or contaminated water. In assessing the risk of serious harm, courts take a common sense approach. A condition that might not offend the Eighth Amendment over a shorter period of time could violate the Eighth Amendment if the inmate was subjected to the condition over a long period.

* * *

Thus, a case in which feces covered only the cell door, and the time period was limited to 48 hours, was insufficient to state a claim under the Eighth Amendment, whereas confinement in cells with multiple feces-covered walls for longer periods could state a claim. *Compare Gofarth v. Sumner County*, 2013 WL 1943020 at *3 (M.D. Tenn. May 9, 2013)(confinement in cell with door covered with feces failed to state claim under 8th Amendment where no injury occurred) with *McBride v. Deer*, 240 F.3d 1287 (10th Cir. 2001)(Eighth Amendment violation could be stated based upon confinement to a cell covered by feces for three days); *see also Johnson v. Pelker,* 891 F.2d 136 (7th Cir. 1989) (wet bedding and clothing, while disquieting and not condoned, did not approach unconstitutional proportions, but placing prisoner in cell for three days with no running water, with feces smeared on the walls, while defendants ignored requests for water to be turned on or for cleaning supplies, required further review); *McCord v. Maggio*, 927 F.2d 844 (5th Cir. 1991) (Eighth Amendment violation shown where prisoner was forced repeatedly to live 23 hours per day over two year period with no bunk, but only a bare, wet mattress placed on a floor covered in filthy water contaminated with human waste, in a roach-infested, windowless, dark and unlighted cell with only a small hole cut in steel door for outside access).

*Still v. Davis*, 2018 WL 1202827 at **5-6 (summary judgment granted to defendants where accidental sewage leak was of relatively short duration and growth of puddle over

7

time covered no more than one third of plaintiff's cell); *see also Foster v. Ohio*, No. 1:16-cv-920, 2018 WL 6726965, at *14 (S.D. Ohio Dec. 21, 2018).

The recent Supreme Court case of *Taylor v. Riojas*, 141 S. Ct. 52 (2020) (per curiam) did not alter the settled case law that "extreme" unsanitary conditions are required to satisfy the objective component of an Eighth Amendment claim. In *Taylor*, the Fifth Circuit had affirmed the grant of qualified immunity to the defendants after holding that the prison officials did not have "fair warning" that housing an inmate in "particularly egregious" conditions for six days was unconstitutional. *Id*. at 53-54. The Supreme Court disagreed, cautioning courts that "no reasonable correctional officer could have concluded that…it was constitutionally permissible to house Taylor in such deplorably unsanitary conditions for such an extended period of time." *Id.* at 53. While the focus of *Taylor* was on qualified immunity,[3] it is relevant to the instant case because it underscores the type of extreme conditions that satisfy the objective component of an Eighth Amendment claim.

*Taylor* described "shockingly unsanitary" conditions including confinement in a cell that was "covered, nearly floor to ceiling, in 'massive amounts' of feces': all over the floor, the ceiling, the window, the walls, and even 'packed inside the water faucet.'" *Id*. at 52 (additional internal quotation and citation omitted). The plaintiff was unable to eat or drink for nearly four days due to fear of contamination from his food and water. "Correctional officers then moved Taylor to a second, frigidly cold cell, which was equipped with only a

---

[3]*See Moderwell v. Cuyahoga Cty.*, 997 F.3d 653, 660 (6th Cir. 2021), quoting Joanna C. Schwartz, *Qualified Immunity and Federalism All the Way Down*, 109 Geo. L.J. 305, 351 (2020) ("The Court's decision in *Taylor* sends the signal to lower courts that they can deny qualified immunity without a prior case on point.") and Lawrence Rosenthal, *Defending Qualified Immunity*, 72 S.C. L. Rev. 547, 593 & n.193 (2020) ("More recently, however, the Court has stressed that on egregious facts, qualified immunity should be denied regardless whether there are factually similar precedents.").

8

clogged drain in the floor to dispose of bodily wastes." *Id.* Several defendants made comments about the conditions before placing the plaintiff in the two cells, suggesting both knowledge and malevolent intent. In the second cell, the plaintiff held his bladder for nearly 24 hours before involuntarily relieving himself "causing the drain to overflow and raw sewage to spill across the floor." *Id.* Deprived of both clothing and a bunk in the second cell, the plaintiff was forced to sleep naked in the raw sewage. *Id.*

At the opposite end of the spectrum and in stark contrast to the extreme conditions described in *Taylor* are cases involving transient or temporary discomforts, which by and large have been deemed to be insufficiently "extreme" to warrant constitutional concern. *See, e.g., Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (discussing temporary inconveniences); *Perkins v. Bailey*, 2021 WL 868887, at *9 (W.D.Mich., March 9, 2021) (holding that allegations of dirty cell conditions over a two-week period fell "well short of meeting the objective component of the Eighth Amendment standard.")*Rogers v. Roy*, 2021 WL 1686133, at *7 (W.D.Mich., April 29, 2021) (collecting cases, and holding that "[a]llegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency."). The undersigned finds the type, quantity, and degree of unsanitary conditions that Plaintiff alleges in this case to fall closer on the continuum to a "temporary inconvenience" or garden variety dirty toilet than to the clearly inhumane conditions described in *Taylor*. Here, Plaintiff alleges that he only noticed the conditions after being placed in the cell, suggesting that the level of grime was not so obvious as the filth on display in *Taylor*. Adding to that conclusion is Plaintiff's description

9

of the conditions. Plaintiff describes observing "feces splatter and piss splatter" on one wall,[4] and a "white dry film" of unknown origin on the surface of the sink and toilet.[5] He alleges that a single request for cleaning chemicals and gloves was denied, leading him to take it upon himself to clean the "dry white film" off the sink and toilet, presumably with soap and water from the sink. A reasonable inference is that Plaintiff cleaned the toilet and sink within hours of his arrival into the cell. Allegations of such a fleeting exposure to an unsanitary sink and toilet while cleaning them without gloves or access to stronger disinfecting chemicals does not rise to the level of an Eighth Amendment claim.

The only remaining question is whether Plaintiff's allegation that the presence of such conditions in the midst of the COVID-19 pandemic elevated his risk to the level prohibited by the Eighth Amendment. *See Wilson v. Seiter*, 501 U.S. 294, 304 (stating that, "*some* conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise - for example, a low cell temperature at night combined with a failure to issue blankets") (emphasis in original). Comparing the facts alleged in the complaint with a recent Sixth Circuit case that included an Eighth Amendment claim based upon COVID-19 risk, the undersigned concludes that it did not.

In *Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020), a subclass of inmates who alleged particular vulnerability to the effects of COVID-19 sought habeas corpus relief at

---

[4]The word "splatter" suggests a pattern of small droplets, as opposed to the "massive amounts" described in *Taylor*. See https://www.merriam-webster.com/dictionary/splatter (accessed on July 21, 2021).
[5]Plaintiff alleges that the substance might have been "piss, spit, cum, or God knows what." Considering the description of the substance as a "white dry film," it might easily have been a more benign dried white liquid such as spilled milk.

10

a point in time when vaccines were not yet available. The medically-vulnerable inmates complained of overcrowded housing and frequently running out of soap. *Id.*, 961 F.3d at 835 (describing complaint of "overcrowding; population density in close confinement; insufficient ventilation; shared toilet, shower, and eating environments; and limits on hygiene and personal protective equipment."). In its review and reversal of a preliminary injunction granted by the trial court, the Sixth Circuit first acknowledged that the at-risk inmates had demonstrated the objective prong of their Eighth Amendment claim because COVID-19 is "highly infectious," poses increased risk to those over 65 or with underlying health conditions, and "if contracted…can cause severe complications or death." *Wilson*, 961 F.3d at 833.

In this case, by contrast, Plaintiff does not allege any health condition that makes him particularly vulnerable to the risks of COVID-19, nor does he allege that he is unvaccinated or that there was any shortage of running water or soap. His complaint does not concern overcrowded conditions that increased risk to an airborne disease; rather, he alleges only a one-time denial of gloves and a cleaning "chemical." At least at the time that Plaintiff alleges that the conditions occurred, the risk of contracting COVID-19 from contact with surfaces was either unknown or presumed to be low. The Eighth Amendment standard requires a showing of a "substantial risk of serious harm." While the Court does not condone the unsanitary conditions as alleged, the transient presence of fecal "splatter" on a wall or a "film" of unknown origin on a toilet or sink – even during a global pandemic – is not the type of *extreme* deprivation that runs afoul of the Eighth Amendment.

Finally, while "massive amounts" of feces pose a more obvious risk, the more garden-variety sanitation issues that Plaintiff alleges in combination with the absence of any allegation of physical injury also supports the conclusion that Plaintiff was not exposed to a substantial risk of serious harm.[6] *See, e.g., Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) (no Eighth Amendment violation where an inmate complained that he was exposed to raw sewage from an overflowed toilet in his cell for four days, but did not allege he suffered any harm); *Gofarth v. Sumner County*, 2013 WL 1943020 at *3 (M.D. Tenn. May 9, 2013) (confinement in cell with door covered with feces failed to state claim under 8th Amendment where plaintiff did not allege he became ill or suffered actual injury).

### B. Subjective Component

Defendants also are entitled to judgment on the pleadings based upon Plaintiff's failure to include allegations that show the subjective element of his Eighth Amendment claim. Deliberate indifference requires a "state of mind more blameworthy than negligence." *Farmer,* 511 U.S. at 835. Plaintiff must show that each Defendant subjectively perceived facts from which he or she inferred a substantial risk existed to Plaintiff of serious harm, actually drew that inference, and then disregarded the risk. *See Richmond*, 450 Fed. Appx. at 455 (citing Farmer, 511 U.S. at 834, and holding that a plaintiff must show the defendants acted "wantonly," with "deliberate indifference to the plaintiff's serious needs."). The Supreme Court has long rejected "a reading of the Eighth

---

[6]The Prison Litigation Reform Act states that "no Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). However, a plaintiff's failure to allege a physical injury will not preclude all constitutional claims. *See King v. Zamiara*, 788 F.3d 207 (6th Cir. 2015) (holding that § 1997e(e) does not preclude constitutional claims, distinct from any mental or emotional injury, that do not result in physical injury).

Amendment that would allow liability to be imposed on [defendants] solely because of the presence of objectively inhumane prison conditions." *Farmer*, 511 U.S. at 838 (quoting *Wilson v. Seiter*, 501 U.S. 294, 299-300 (1991)); *see also Krutko v. Franklin County, Ohio*, 559 Fed. Appx. 509, 511 (6th Cir. 2014) (remanding to district court to conduct an individualized inquiry to determine whether any of the defendants were entitled to qualified immunity based upon the evidence presented as to the defendants' subjective state of mind).

Close review of Plaintiff's allegations demonstrates that Plaintiff has failed to allege any facts sufficient to support the subjective element of his claim. Because Plaintiff himself did not perceive the sanitation issues until after being placed in the cell, it does not appear that the "splatter" on one wall or "film" on the sink and toilet were obvious to any passerby or to someone entering the cell only briefly.[7] After "noticing" the issues, Plaintiff alleges that he asked the two Defendants for "gloves and a cleaning chemical" and was "denied." Critically, he does not allege that he informed either Defendant of the nature or degree of the allegedly unsanitary conditions, or why he sought the supplies. Nor does Plaintiff include allegations that would suggest any independent knowledge of the alleged conditions by Defendants. *Contrast Taylor*, 141 S. Ct. at 54 (discussing comments made by officer, upon placing plaintiff in the feces-covered cell, that Taylor was "going to have a long weekend" and comment by another defendant, upon placing him in the second cell, that he "hoped Taylor would 'f***ing freeze'") (citation to lower record omitted). Since Plaintiff has failed to allege any facts that suggest that either Defendant was aware of the allegedly unsanitary conditions and exhibited the requisite

---

[7]It is not clear from Plaintiff's complaint whether either Defendant was responsible for placing him in the cell, or whether they entered the cell at any time.

13

indifference to Plaintiff's health or safety, Defendants are entitled to judgment on the pleadings.

### C. Qualified Immunity

A governmental official performing discretionary functions is entitled to qualified immunity in his or her individual capacity if the facts alleged do not make out a violation of a constitutional right, or if the alleged constitutional right was not clearly established at the time of the defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223 (2009); see also *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In most cases, the Sixth Circuit instructs trial courts to resolve qualified immunity at the summary judgment stage rather than on a motion for judgment on the pleadings.

> Although a defendant's "entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." *Wesley v. Campbell*, 779 F.3d 421, 433–34 (6th Cir. 2015) (cleaned up). "The reasoning for our general preference is straightforward: 'Absent any factual development beyond the allegations in a complaint, a court cannot fairly tell whether a case is "obvious" or "squarely governed" by precedent, which prevents us from determining whether the facts of this case parallel a prior decision or not' for purposes of determining whether a right is clearly established." *Guertin v. State*, 912 F.3d 907, 917 (6th Cir. 2019) (quoting *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005) (Sutton, J., concurring)). Therefore, "it is generally inappropriate for a ... court to grant a [12(c) motion for judgment on the pleadings] on the basis of qualified immunity." *Wesley*, 779 F.3d at 433.

*Moderwell*, 997 F.3d at 660-61.

However, this "general preference" is not without exceptions. Thus, the Sixth Circuit also recognizes that "insubstantial claims against government officials should be resolved as early in the litigation as possible, preferably prior to broad discovery." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (citing *Pearson v. Callahan*, 555

14

U.S. at 231); accord *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). In the case presented, Plaintiff's allegations are so insubstantial that the Court can make the qualified immunity determination without awaiting further development of the record. Alternatively, in the unlikely event that a reviewing court would find that Plaintiff has stated an Eighth Amendment claim, the undersigned concludes that no reasonable correctional officer would have foreseen that denying Plaintiff's request for gloves and a "cleaning chemical" on the facts alleged would violate the Eighth Amendment.

## IV. Conclusion and Recommendation

For the foregoing reasons, **IT IS RECOMMENDED THAT** Defendants' motion for judgment on the pleadings (Doc. 14) be **GRANTED** and that this case be dismissed.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

LE'SEAN EDGE,

    Plaintiff,

    v.

MS. MAHLMAN, et al.,

    Defendants.

Case No. 1:20-cv-892

Black, J.
Bowman, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).